# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

BOBBIE GREEN,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　　)　　Case No. 17-CV-577-JED-FHM
v.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
BOARD OF COUNT COMMISSIONERS　　　)
OF CRAIG COUNTY, OKLA. et al.,　　)
　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　 )

## **OPINION AND ORDER**

**I.　Background**

The plaintiff, Bobbie Green, initiated this civil rights action in state court against the Board of County Commissioners of Craig County, Oklahoma (the County), Craig County Sheriff Heath Winfrey, in his individual and official capacities, and Shea Dillon Barr, in his individual capacity.[1] The action was removed by the County and Sheriff. (*See* Doc. 2).

According to the allegations of the Petition (Doc. 2-2), which are taken as true for purposes of this order, while plaintiff was an inmate in the Craig County Jail, she was raped by defendant Shea Dillon Barr, who was a detention officer at the jail. On the first night Barr worked the night shift, plaintiff was moved to a detox cell. Barr entered the cell with plaintiff and unfastened his pants. Plaintiff pushed him away and said "No." At that point, another jailer called for Barr over the intercom, telling Barr he needed to complete paperwork. Barr left the detox cell, and returned later, at which time he "orally, digitally, and vaginally raped [plaintiff]." (*Id.* at ¶ 39). Other jailers

---

[1]　Two other plaintiffs, Shayla Kessinger and Shauna South, also asserted claims against the defendants. They subsequently dismissed their claims. (Doc. 19). Accordingly, this order addresses only the claims of Ms. Green, the sole remaining plaintiff.

knew that plaintiff was left in the detox cell, alone with Barr, but the Sheriff's Department had no policy that prevented male detention officers from entering female inmates' cells. The plaintiff was left in the detox cell for 24 hours after the rape. The next night after the rape, when Barr returned for his night shift, he took the plaintiff below the stairs, which are not monitored by cameras, and Barr ordered plaintiff to show her breasts.

Two weeks later, the plaintiff reported the rape. The OSBI and Jason Hutcherson of the Craig County Sheriff's Department interviewed the plaintiff. Hutcherson attempted to induce the plaintiff to change her report of the rape.[2] Ultimately, the rape was "confirmed as truthful," and Barr was convicted. However, the plaintiff remained fearful because "there was a collaborative effort by the Craig County Sheriff's Department and other jailers to be quiet and/or induce her not to proceed against [Barr] after the rape and during the investigation." (*Id.* at ¶ 48). Even after Barr was arrested, the plaintiff was denied items that all other inmates have, such as towels and ice, and she believes jailers tampered with her food. Those actions were in retaliation for reporting the rape. (*Id.* at 50).

Plaintiff asserts that, as a matter of policy and practice of the Craig County Sheriff's Department, male detention officers were placed in positions to oversee female inmates and were "permitted to engage in rape, sexual battery and blackmail." (Doc. 2-2 at ¶ 24). She asserts that Barr repeatedly engaged in inappropriate sexual actions with female inmates, without any intervention by other jailers. Plaintiff further alleges a policy, custom, or practice of failing to train and supervise "employees, commit sexual battery on inmates of the Craig County jail as well as commit all of the outrageous sexual advances, sexual harassment and sexual humiliation described" in her Petition. (*Id.* at ¶ 25). The plaintiff asserts that her rights to be free from

---

[2] Neither the OSBI nor Hutcherson were named as defendants in this action.

unreasonable search and seizure, to due process of law, and to equal protection were violated by the defendants. (*Id.* at ¶ 26). She contends that the County and the Sheriff "allowed male jailers to work within an all-female jail without any direct supervision to ensure the male jailers could not be left alone for a period of time where they can prey upon the detainees." (*Id.* at ¶ 30).

Plaintiff asserts claims against the defendants for unlawful use of excessive force under the Oklahoma Governmental Tort Claims Act (First Cause of Action), and claims under 42 U.S.C. § 1983 for a failure to train and supervise, resulting in a constitutional deprivation in violation of (Second Cause of Action), violation of the Fourth Amendment by excessive force (Third Cause of Action), a violation of substantive due process under the Fourteenth Amendment (Fourth Cause of Action), unlawful use of excessive force in violation of Article 2, § 30 of the Oklahoma Constitution (Fifth Cause of Action), intentional infliction of emotional distress (Sixth Cause of Action), and respondeat superior liability of the Sheriff and the County (Seventh Cause of Action) pursuant to *Bosh v. Cherokee Cty. Gov. Bldg. Auth.*, 305 P.3d 994 (Okla. 2013). The defendants have moved to dismiss, and the Court has considered all briefing on the motions. (Doc. 10, 12, 14, 16, 17).

**II.     Dismissal Standards**

In considering a Rule 12(b)(6) dismissal motion, a court must determine whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require "a short and plain statement of the claim to show that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The standard does "not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face,"

and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555-56, 570 (citations omitted).

"Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*. at 556. "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 562. In making the dismissal determination, a court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to the claimant. *See Twombly*, 550 U.S. at 555.

### III. Discussion

#### A. Defendant Barr's Partial Motion to Dismiss

Barr moves to dismiss plaintiff's Fourth, Fifth, and Seventh Causes of Action against him. (Doc. 12). Barr argues that plaintiff's Fourth claim, which alleges a due process violation under the Fourteenth Amendment, is duplicative of her excessive force claim under the Fourth Amendment and should be dismissed because plaintiff has stated a claim against Barr under the Fourth Amendment. However, the cases cited by Barr do not necessarily, as a matter of law, preclude the assertion of a substantive due process claim at the pleading stage. An inmate has "a constitutional right not to be raped by a detention officer in the facility where she was being detained." *Perry v. Durborow*, 892 F.3d 1116, 1121 (10th Cir. 2018) (citing *Keith v. Koerner*, 843 F.3d 833, 837 (10th Cir. 2016)). Pretrial detainees may assert such a right under the Due Process Clause, although such claim may be analyzed utilizing standards applied to other amendments.

4

*See id.* (quoting *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999)). It is unclear whether the plaintiff was a pretrial detainee at the time of the alleged rape or whether she was a convicted prisoner being held at the jail. In any event, the plaintiff may at the pleading stage present alternative constitutional theories. It is premature to dismiss her due process claim, and Barr's motion to dismiss that claim will be denied at this time.

Barr argues that plaintiff's Fifth and Seventh claims for excessive force should be dismissed as to him because he may not be held liable under *Bosh*. The Court agrees. Although his alleged conduct is the basis for the plaintiff's claims against the County under the Oklahoma Constitution, other federal district courts in Oklahoma have determined that *Bosh* does not recognize a claim under the Oklahoma Constitution against an individual officer. *See, e.g., Maher v. Oklahoma*, 165 F. Supp. 3d 1089, 1093, n.3 (W.D. Okla. 2016) (noting "no legal authority that permits a *Bosh* claim to be brought against an individual actor"); *Smith v. Hedgecock*, No. 18-CV-46-JHP, 2018 WL 3478893, *5-6 (E.D. Okla. Jul. 19, 2018) (collecting cases). Plaintiff has not cited any authority in her response to Barr's motion to dismiss the Fifth and Seventh claims to the extent that they are against him. (*See* Doc. 17 at 5, § III). Barr's motion to dismiss the Fifth and Seventh claims – to the extent asserted against Barr – will be granted.

### B. Individual Capacity Claims Against Sheriff Winfrey

Sheriff Winfrey is named as a defendant in his individual and official capacities. The Sheriff argues that the plaintiff has not stated any plausible claim against him in his individual capacity and he is entitled to qualified immunity. The Court agrees. The plaintiff's allegations are devoid of any facts suggesting personal involvement by Sheriff Winfrey in the violation of the plaintiff's constitutional rights. The plaintiff alleges that she was raped and treated in a retaliatory manner in March 2016. (Doc. 2-2 at ¶¶ 32-49). Election records reflect that Sheriff Winfrey was

not sworn in as Craig County Sheriff until January, 2017, months after the incidents that form the basis of plaintiff's claims. The plaintiff did not dispute or respond to that specific point, other than to assert that "[i]f he was not the Sheriff at the time, Plaintiff requests that Defendants provide the correct Sheriff, and allow Plaintiff requests [sic] to substitute and Amend their claims rather than they be dismissed." (Doc. 14 at 8). Her response makes it clear that she has not alleged and cannot allege facts that reflect any personal involvement by Sheriff Winfrey that would support a claim against him in his individual capacity.

In response to Sheriff Winfrey's assertion of qualified immunity, plaintiff merely argues that she "has plead sufficient factual allegations that the Sheriff allowed Barr to work in the jail and have the opportunity to harass and rape inmates." (Doc. 14 at 20). Even had Sheriff Winfrey been in office at the time of the rape, plaintiff's response is wholly insufficient to maintain a claim against a sheriff for merely allowing an employee to work at the jail. Constitutional liability may not be premised merely on the fact that an employee committed a constitutional violation. *See Perry*, 892 F.3d at 1119-27. In *Perry*, the plaintiff claimed that she was raped by a detention officer at the Ottawa County Jail, and she sued the Ottawa County Sheriff alleging that he was responsible for the alleged rape under a supervisory liability theory. Among other things, the plaintiff in *Perry* relied upon assertions that (1) the sheriff was necessarily aware that male detention officers were entering female pods in non-emergency situations, in violation of Oklahoma jail standards and (2) there were blind spots that were known to detention officers. *See id.* at 1118-19. Those facts were insufficient to overcome the sheriff's assertion of qualified immunity because of the absence of assertions that the sheriff was aware of any previous sexual assaults at the Jail. *See id.* at 1125-27. The Tenth Circuit concluded that the sheriff was entitled to qualified immunity because the law was not clearly established that a sheriff would violate the

6

constitutional rights of a detainee under such circumstances in the absence of awareness of prior sexual assaults at the jail. *See id.* at 1127.

Given that Sheriff Winfrey was not even the Sheriff at the time of the plaintiff's alleged rape, and there are no allegations that he otherwise personally participated in any constitutional violation, there is no authority that would support the maintenance of any claim under § 1983 for supervisory liability of Sheriff Winfrey. Moreover, because plaintiff has not alleged that Sheriff Winfrey was aware of previous incidents of rape at the jail (indeed, he was not even the Sheriff at the time of the rape of the plaintiff), he would be entitled to qualified immunity. Plaintiff's § 1983 claims against Sheriff Winfrey, in his individual capacity, will be dismissed.

With respect to any state law claims plaintiff has asserted against him in his individual capacity, Sheriff Winfrey argues that any such claims are barred by the statute of limitations in *Okla. Stat.* tit. 12, § 95(A)(11), which provides that "[a]ll actions filed by an inmate or by a person based upon facts that occurred while the person was an inmate in the custody of . . . a political subdivision of the State of Oklahoma . . . shall be commenced within one (1) year after the cause of action shall have accrued." The plaintiff's claims accrued in March 2016, but she did not file her Petition until August 11, 2017, well after the one-year statute of limitations had expired. The plaintiff provided no response to Sheriff Winfrey's statute of limitations argument.

The plaintiff's claims against Sheriff Winfrey, *in his individual capacity*, will be dismissed. Plaintiff's claims against Sheriff Winfrey in his *official capacity* will be addressed below, with the claims against the County.

7

### C. The Craig County Defendants' Dismissal Motion

#### 1. Section 1983 Official Capacity / Municipality Claims

Plaintiff has asserted claims against both the Board of County Commissioners of Craig County (the County) and Sheriff Winfrey, in his official capacity. Plaintiff's § 1983 claims against Sheriff Winfrey in his official capacity are analyzed as claims against a municipality. A § 1983 claim against a government actor in his official capacity "is essentially another way of pleading an action against the county or municipality" he represents, and is considered under the standards applicable to § 1983 claims against municipalities or counties. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010); *see Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Lopez v. LeMaster*, 172 F.3d 756, 762 (10th Cir. 1999) ("[Plaintiff]'s suit against Sheriff LeMaster in his official capacity as sheriff is the equivalent of a suit against Jackson County, [Oklahoma]."). The Court will accordingly consider the official capacity claim against Sheriff Winfrey under the same standards applicable to the County.

A municipality may not be held liable under § 1983 solely because its employee inflicted injury; municipal liability cannot be found by application of the theory of respondeat superior. *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "[L]ocal governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). To hold a county liable under § 1983, a plaintiff must demonstrate (1) the existence of a municipal policy or custom by which the plaintiff was denied a constitutional right and (2) that the policy or custom was the moving force behind the constitutional deprivation (i.e. "whether there is a direct causal link between [the] policy or custom and the alleged constitutional deprivation"). *See City of Canton v. Harris*, 489

8

U.S. 378, 385 (1989); *Monell*, 436 U.S. at 694 (citations omitted). The requirement of a policy or custom distinguishes the "acts of the municipality from acts of employees of the municipality, and thereby make[s] clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479. The Tenth Circuit has identified the types of municipal conduct that amount to a policy or custom:

> A municipal policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law' "; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; and (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)).

The County argues that the plaintiff has not sufficiently alleged facts supporting a policy or custom that was the motivating force behind a constitutional deprivation. The plaintiff's allegations regarding policy or custom are conclusory. The plaintiff has alleged that, as a policy or practice, male detention officers were placed in positions to oversee female inmates and were "permitted to engage in rape, sexual battery and blackmail." (Doc. 2-2 at ¶ 24). However, she alleges no facts that support her conclusory assertion that there was a practice of permitting male detention officers to rape or batter female inmates.

Plaintiff also alleges a policy or custom of failing to train and supervise employees. (*Id.* at ¶ 25). The Supreme Court has reiterated that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61.

With respect to a failure to train or supervise, a municipality may only be liable where "the need for more or different training is so obvious, and the inadequacy [in training] so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390.

The Supreme Court has recognized "limited circumstances in which an allegation of a 'failure to train' can be the basis for [§ 1983 municipal] liability." *Canton*, 489 U.S. at 387. The "touchstones of this inquiry, therefore, are the risk inadequate training poses and the [municipality's] awareness of that risk." *Brown*, 227 F.3d at 1288-89. In *Connick*, the Supreme Court further elaborated on the deliberate indifference required to impose municipal liability under § 1983 for a failure to train:

> "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. The city's "policy of inaction" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." A less stringent standard of fault for a failure-to-train claim "would result in *de facto respondeat superior* liability on municipalities. . . ."
>
> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the 'deliberate indifference'- necessary to trigger municipal liability." Without notice in a particular respect, decision-makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

563 U.S. at 61-62 (internal citations and quotations omitted). The Supreme Court also noted that it had not foreclosed "the possibility that the unconstitutional consequences of failing to train could be so patently obvious that a [municipality] could be liable under § 1983 without proof of a pre-existing pattern of violations," but reiterated that such liability is only available in a "rare" case

10

involving a "narrow range of circumstances." *Id.* at 64 (quoting *Bryan County*, 520 U.S. at 409); *see also id.* at 72 (Scalia, J., concurring) (characterizing such claims as "rare").

Other than a conclusory assertion of failure to adequately train and/or supervise, the plaintiff does not identify any specific County policy, custom, or procedure that was the motivating force behind the alleged rape or resulting constitutional deprivation. Plaintiff has not alleged any facts indicating any direct causal link between any policy or obvious absence of training and a constitutional deprivation. The Tenth Circuit has noted that "[i]t is not enough to allege 'general deficiencies' in a particular training program," and "a plaintiff 'must identify a specific deficiency in the [entity's] training program closely related to his ultimate injury. . . ." *Keith v. Koerner*, 843 F.3d 833, 838-39 (10th Cir. 2016). In addition, "[s]pecific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior." *Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998); *see also id.* ("'In light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women.'") (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996)); *see also Bates v. Bd. Of Cty. Comm'rs of Mayes Cty.*, 674 F. App'x 830, 834 (10th Cir. 2017) ("[Plaintiff] asserts that [a male detention officer] should not have been permitted to guard her by himself, because he was new to the job and he had not been adequately trained in supervising female inmates. But she has failed to identify a specific training deficiency that was closely related to her sexual assault.").

Plaintiff has not pleaded factual allegations of any specific deficiency of training or supervision closely related to her injury, and she has not alleged any awareness by the County of a pre-existing pattern of rapes or similar sexual abuses by detention officials at the jail. She has thus not asserted facts that state any plausible claim for municipal liability under a failure to train

11

or supervise theory. The plaintiff's § 1983 claims (her Second, Third, and Fourth Causes of Action) against Craig County and Sheriff Winfrey in his official capacity will be dismissed.

### 2. State Law Claims

Sheriff Winfrey argues that he is not the proper party defendant to a claim under the Oklahoma Governmental Tort Claims Act (OGTCA) or *Bosh*. The Court agrees. *Bosh* authorizes a claim against a municipality, and the OGTCA does not permit the naming of an individual and requires that the action "shall name the state or political subdivision against which liability is sought be established." *Okla. Stat.* tit. 51, §§ 153(C), 163(C). Under Oklahoma law, the proper entity in such a suit is the Board of County Commissioners. *See Okla. Stat.* tit. 19, § 4. Accordingly, the plaintiff's state law claims against Sheriff Winfrey are dismissed.

The County also contends that plaintiff's First claim, for unlawful use of excessive force under the OGTCA, should be dismissed because the County is immune from liability for any tort claims under the correctional facility exemption, *Okla. Stat.* tit. 51, § 155(25). That statute provides that "[t]he state or a political subdivision shall not be liable if a loss or claim results from provision, equipping, operation or maintenance of any prison, jail or correctional facility." *Id.* The defendant argues that plaintiff's tort claims arise from the County's operation of the jail. The "provision, equipping, operation or maintenance" exemption has been very broadly applied in Oklahoma cases. *See, e.g., Medina v. State*, 871 P.2d 1379, 1384, n.13 (Okla. 1993); *Redding v. State*, 882 P.2d 61 (Okla. 1994); *McClain v. Sheriff of Mayes County*, 595 F. App'x 748, 754 (10th Cir. 2014); *Chrisman v. Board of Cty. Comm'rs of Okla. Cty.*, No. CIV-17-1309-D, 2018 WL 4291761, *9 (W.D. Okla. Sept. 7, 2018); *Sanders v. Creek Cty. Bd. Of Cty. Comm'rs*, No. 17-CV-492-JHP-FHM, 2018 WL 3580770, *4-5 (N.D. Okla. Jul. 25, 2018). Accordingly, the plaintiff's First claim under the OGTCA is dismissed, as the County is immune as to that claim.

Plaintiff's intentional infliction of emotional distress claim (her Sixth Cause of Action) against Craig County is also subject to dismissal for the additional reason that such a claim necessarily excludes good faith conduct, and an employee committing that tort could not be considered to have been acting within the scope of employment for purposes of political subdivision liability under the OGTCA. *See, e.g., McMullen v. City of Del City*, 920 P.2d 528, 531 (Okla. Civ. App. 1996); *Shaw v. City of Okla. City*, 380 P.3d 894, 897 (Okla. Civ. App. 2016).

The County further argues that the Fifth and Seventh claims – for excessive force under the Oklahoma Constitution and *Bosh* – are duplicative. The Court agrees. The Fifth and Seventh claims, which assert excessive force claims under Article 2 § 30 of the Oklahoma Constitution and *Bosh*, are duplicative and should be considered as one claim. The Oklahoma Supreme Court in *Bosh* recognized that pretrial detainees have a private right of action under the Oklahoma Constitution, Article 2, § 30, for excessive force, notwithstanding immunity under the OGTCA. *Bosh*, 305 P.3d at 1001.

The County contends that the plaintiff's *Bosh* / state constitutional claim should be dismissed because plaintiff "cannot establish that Defendant Shea Dillon Barr was acting within the scope of his employment when he sexually assaulted [her]." (Doc. 10 at 24 of 29). The County notes that Oklahoma courts have concluded that an employee who rapes or commits sexual assault is not acting within the scope of employment. (Doc. 16 at 7). It is true that some state and federal courts in Oklahoma have determined that an employee's commission of sexual assault is not within the scope of employment for purposes of the assertion of state law claims. *See, e.g., Schovanec v. Archdiocese of Okla. City*, 188 P.3d 158, 161 (Okla. 2008) (no respondeat superior liability for church employee's predatory sexual conduct); *N.H. v. Presbyterian Church*, 998 P.2d 592, 599-600 (Okla. 1999) (sexual assault by ecclesiastic officer was outside the scope of

employment); *Bates*, 674 F. App'x at 835-36 ("Given this guidance from the Oklahoma Supreme Court, we agree with the district court that [the detention officer] acted outside of the scope of his employment by sexually assaulting [the plaintiff]") (citing *Schovanec* and *N.H.*).

However, a more recent Tenth Circuit decision, *Barnes v. United States*, 707 F. App'x 512 (10th Cir. 2017), indicates that a determination of whether an unlawful action is "within the scope of employment" under Oklahoma law is not as cut and dried as the County asserts:

> Under Oklahoma law an employer may be liable for an employee's intentional torts if the employee was "acting within the scope of the employment in furtherance of assigned duties." *Bosh [ ]*, 305 P.3d [at] 998. . . . "[O]ne acts within the scope of employment if [1] engaged in work assigned, or [2] if doing what is proper, necessary and usual to accomplish the work assigned, or [3] doing that which is customary within the particular trade or business." *Id.*; accord *Tuffy's, Inc. v. City of Oklahoma City*, 212 P.3d 1158, 1163 (Okla. 2009) (officers allegedly attacked nightclub patrons). "[A]n employer can be held liable even if the employee acts beyond the given authority" so long as the act was "incident to some service being performed for the employer." *Rodebush v. Okla. Nursing Homes, Ltd.*, 867 P.2d 1241, 1245 (Okla. 1993).
>
> To apply the scope-of-employment analysis in the context of law enforcement, the Oklahoma Supreme Court has embraced a test formulated by the Florida Supreme Court. *See DeCorte [v. Robinson]*, 969 P.2d [358] at 361 [(Okla. 1998)] (claim of false arrest and assault of prisoner by officer). Under the test, "'liability exists for acts of officers that can be described as abuses of lawful power,'" but not for "'an unlawful usurpation of power the officer did not rightfully possess.'" *Id.* at 361-62 (quoting *McGhee v. Volusia Cty.*, 679 So.2d 729, 733 (Fla. 1996)). The line between abuse and usurpation is not the line between legal and illegal acts. An "'officer's misconduct, though illegal,'" may be "'accomplished through a[n] abuse of power lawfully vested in the officer.'" *Id.* at 362 (quoting *McGhee*, 679 So.2d at 732). . . .
>
> In the law-enforcement context, . . . the courts have generously construed the breadth of an officer's purpose, perhaps because public-policy concerns generally make it "appropriate to hold [the law-enforcement agency] responsible for [an officer's] acts." *Id.* With great power comes great responsibility, and the powers of law-enforcement officers are unique in our society. Police agencies are expected to strictly control misbehavior by their own officers. Thus, the courts of Oklahoma and Florida have said that an officer may have in mind a governmental purpose when he abuses a prisoner, *see McGhee*, 679 So.2d 729; uses excessive force in a false arrest, *see DeCorte*, 969 P.2d 358; *Richardson*, 511 So.2d 1121;

14

> assaults nightclub patrons, *see Tuffy's*, 212 P.3d 1158; or even arrests a child for the purpose of sexually abusing her, *see Hennagan*, 467 So.2d 748.

*Barnes*, 707 F. App'x at 517–19.

The Court also notes that, in both *N.H.* and *Schovanec*, the Oklahoma Supreme Court examined the particular functions of employees of churches, rather than law enforcement officers or prison guards. The brutal attack described in *Bosh* itself – with numerous jailers joining a physical attack on an inmate, which continued when they moved the inmate to a shower out of the view of cameras and resulted in a vertebral fracture – was not automatically excluded from having been committed within the scope of the jailers' employment. The Oklahoma Supreme Court in *Bosh* recognized that "[a]ssaults of excessive force can certainly occur within one's scope of employment." 305 P.3d at 1003. Based on *Barnes* and *Bosh*, the Court declines to determine at the pleading stage that Barr was not acting within the scope of his employment under Oklahoma law, and the County's motion to dismiss the plaintiff's *Bosh* claim for excessive force in violation of the Oklahoma Constitution will be denied. That determination is without prejudice to the County's reassertion of its scope of employment argument at the summary judgment stage.

## IV.  Conclusion

Defendant Barr's motion to dismiss (Doc. 12) is **granted in part and denied in part**. Plaintiff's claims under *Bosh* (her Fifth and Seventh Causes of Action) are dismissed to the extent that she attempted to assert them against Barr. She may maintain her claim under the Fourteenth Amendment Due Process Clause against Barr at this stage of the proceedings.

The motion of the County and Sheriff Winfrey (Doc. 10) is **granted in part and denied in part**. The plaintiff's claims against Sheriff Winfrey – in his individual and official capacities – are dismissed. The plaintiff's First, Second, Third, Fourth, and Sixth Causes of Action against the County are dismissed. The plaintiff has stated a plausible claim against the County under *Bosh* /

15

Article 2, § 30 of the Oklahoma Constitution, and the County's motion to dismiss that claim is denied.

The plaintiff has requested leave to amend to cure any deficiencies of her pleading. She will be permitted leave to amend to attempt to state a § 1983 municipal liability claim against the County. To maintain such a claim, however, she must identify facts that satisfy the requirements for such a claim as discussed herein. Her request for leave to amend any other claims is denied, as any further amendment would be futile. Any amended pleading shall be filed within **14 days** of the filing of this order.

SO ORDERED this 12th day of October, 2018.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE